**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DOUGLAS GILBERT,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-04-BE-1361-S** |
| | ] | |
| **UNITED STATES DEPARTMENT** | ] | |
| **of JUSTICE, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This case is currently pending before the court on a motion to dismiss or, in the alternative, a motion for summary judgment (doc. # 22).  Defendants United States Department of Justice ("DOJ"), The Federal Bureau of Prisons ("BOP"), and Attorney General John Ashcroft have submitted a supporting brief (doc. # 23) and a reply brief (doc. # 31).[1]  *Pro se* plaintiff Douglas Gilbert's Second Amended complaint alleges that the defendants, his former employers, retaliated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*; violated The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et. seq.*; and violated Section 501 of the Rehabilitation Act of 1973, as amended, 29

---

[1]On January 23, 2006, the Office of Personnel Management was dismissed as a defendant in this case (doc. # 56).

U.S.C. § 791 *et seq*.,[2] by refusing to re-employ him at correctional institutions in Talladega, Alabama and in St. Petersburg, Florida.[3]

The plaintiff filed an objection to the motion (doc. # 27) with corresponding evidentiary submissions (doc. #28).  In his submissions, Gilbert argues that, despite his placement on the DOJ re-employment priority list on June 10, 2002, he was not considered for an inmate systems manger position at the Talladega facility or for a correctional program officer position at the St. Petersburg facility.  Plaintiff attributes his non-selection for the above-referenced positions to (1) a January 1994 dispute with his supervisor that ultimately culminated in his separation from federal employment; (2) the defendants' perception that the plaintiff continues to suffer from disabling depression; and (3) age discrimination.

Although styling their motion as one to dismiss, the defendants' submissions contain affidavits and other documents relating to matters outside the pleadings.[4]  At the September 16, 2005 status conference, the court gave the parties oral notice of its intent to convert the defendants' motion to dismiss into a motion for summary judgment under FED. R. CIV. P. 56.  *See Jones v. Auto. Ins. Co.*, 917 F.2d 1528 (11th Cir. 1990) (providing courts with the authority

---

[2]Plaintiff's original complaint requested relief under 5 C.F.R. Part 353 and 5 U.S.C. § 8151(b).  In their motion to dismiss or alternative, motion for summary judgment, the defendants argued that the above-cited statute and regulations did not provide the court with jurisdiction.  However, the plaintiff's reply brief did not address the defendants' arguments.  Consequently, the court finds that the plaintiff has abandoned his claim relating to 5 C.F.R. Part 353 and 5 U.S.C. § 8151(b).  Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.  *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).

[3]On September 27, 2005, the court entered an order dismissing several claims contained in the plaintiff's complaint (doc. # 1) and amended complaint (doc. # 10) for failure to exhaust administrative remedies.  *See* doc. # 41.

[4]*See* doc. # 22.

to convert motions to dismiss into motions for summary judgment upon reasonable notice to the parties); *Concordia v. Bendekovic*, 693 F.2d 1073 (11th Cir. 1982) (same).

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases where no genuine issues of material facts are present.  Fed. R. Civ. P. 56.  Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986).  A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251-52.  In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him."  *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986).

Having reviewed the parties' submissions under the motion for summary judgment standard, the court concludes that the defendants' motion for summary judgment is due to be GRANTED in part and DENIED in part.  Specifically, the court finds that venue is proper for the plaintiff's Rehabilitation Act and ADEA claims in connection with his non-selection for the position at the St. Petersburg, Florida correctional facility.  However, the court nevertheless finds that the motion for summary judgment is due to be GRANTED on all the plaintiff's claims in connection with his non-selection for the correctional officer program position in St. Petersburg, Florida.

Similarly, the motion for summary judgment is due to be GRANTED on the plaintiff's Title VII Retaliation and Rehabilitation Act claims in connection with his non-selection for the inmate systems manager position in Talladega, Alabama.  However, the motion for summary

judgment is due to be DENIED on Gilbert's ADEA claim in connection with his non-selection for the inmate systems manager position in Talladega, Alabama.  In short, this case will proceed to trial on the ADEA claim in connection with the plaintiff's non-selection for the inmate systems officer position at the Talladega, Alabama correctional facility.

The facts stated in the light most favorable to the plaintiff are as follows.  Gilbert was employed by the Federal Bureau of Prisons at its Talladega, Alabama facility from February 1974 until July 24, 1995.  The plaintiff's separation from federal employment arose from a January 1994 dispute with his supervisor, N. Wayne Smith, regarding the early release of an inmate.  As an inmate systems manager, GS-006-12, Gilbert supervised approximately eleven employees and was responsible for the timely release of inmates in accordance with federal law.  When the plaintiff told Smith about what he perceived to be an error, Smith ordered Gilbert to release the inmate.  The inmate's release was later authorized by the legal staff in the BOP regional office. Shortly thereafter, Smith threatened Gilbert's job.

Approximately eight months later, on September 14, 1994, Gilbert was notified of a proposed demotion from his position as a Correctional Programs Officer to a Correctional Supervisor, GS-9.[5]

Shortly thereafter, Gilbert filed an occupational disease claim alleging that job stress caused by his supervisor prevented him from performing the duties of his job.  Plaintiff was approved for worker's compensation effective September 14, 1994, the date of the alleged workplace stress and eventually placed on disability leave.  Approximately seven months later,

---

[5]The effective date of the plaintiff's demotion was October 4, 1994.  However, the plaintiff never worked as a correctional officer.

on April 15, 1995, Gilbert attempted to return to work at the Talladega, Alabama correctional facility but was denied re-employment and placed on home duty assignment by Warden J.L. Sivley.  The plaintiff was officially terminated from federal employment on July 24, 1995 and shortly thereafter, began receiving worker's compensation benefits for depression.

Gilbert received worker's compensation benefits until 2002, when he began applying for jobs with the BOP.  On February 26, 2002, the plaintiff applied for a correctional program officer position at the BOP facility in St. Petersburg, Florida.  The opening date for the position was February 15, 2002 and the closing date was March 11, 2002.  The area of consideration for the St. Petersburg position was current DOJ employees, eligible surplus and displaced employees in the local commuting area, and those employees on the re-employment priority list.

However, plaintiff was rated as not eligible for the position because competition for this position was not open to reinstatement eligibles.  As explained by Jim Hyland, a human resources manager for the Federal Bureau of Prisons' Central Office, Gilbert was not considered for the position at the BOP facility in St. Petersburg because he was not a current DOJ employee or on the re-employment list.[6]

In April and May 2002, Gilbert's doctors issued letters indicating that he could return to work after May 8, 2002 without any medical restrictions.  Based on the strength of these letters, Gilbert applied for an inmate systems manager position at the BOP's Talladega, Alabama facility on June 5, 2002.  The opening date for the position was May 31, 2002 and the closing date was June 21, 2002.  The area of consideration for this position was BOP-wide (i.e. current BOP employees or those on the re-employment priority list.).

---

[6]*See* doc. # 7, *Ex*. 6.

On August 16, 2002, plaintiff received a letter from the DOJ advising him that he had not been considered for this position because he was not a current DOJ employee. Furthermore, the affidavit testimony of Kathy Carr indicated that, had the plaintiff been on the re-employment list, he would have been considered for the position.[7]

However, a June 28, 2002 letter from the Department of Justice, advised the plaintiff that "[t]he issues regarding the Re[-]employment Priority List (RPL) are not in dispute from the standpoint of the Bureau of Prisons, nor are they negotiable. Your eligibility for the program was effective *on June 10, 2002, and will expire on June 9, 2004."* [8] (emphasis added). Consequently, by the DOJ's own admission, Gilbert was on the re-employment priority list prior to the closing date of the FCI Talladega position.[9]

## II. DISCUSSION

### A. Denial of Employment at the St. Petersburg Facility

### 1. Venue

The defendants argue that the plaintiff's claims relating to his denial of employment at

---

[7]*See* doc. # 22, *Ex.* 7.

[8]*See* doc. # 28, *Ex.* 6.

[9]Approximately six months later on December 19, 2002, plaintiff was partially removed from the re-employment list because the DOJ concluded that he had given false information at an October 22, 2002 interview. Based on its determination that Gilbert had been untruthful about the reasons for his separation from federal employment back in 1994, the BOP was ordered not to consider the plaintiff for any GS-006 (correctional institution administration positions), any GS-007 (correctional officer positions), or any GS-950 (Paralegal series positions) advertising jobs within BOP correctional institutions. However, the partial removal from the re-employment priority list did not prevent Gilbert from applying for GS-006, GS-007, or GS-950 positions outside of correctional institutions or from applying for employment with other federal agencies.

the BOP facility in St. Petersburg should be dismissed for lack of venue.[10]  Two venue statutes govern Gilbert's claims regarding his non-selection for the correctional program officer position in St. Petersburg, Florida.  The venue statue governing the plaintiff's Rehabilitation Act claim is contained in 42 U.S.C. § 2000e-5(f)(3) and the venue statute governing the ADEA claim is contained in the general venue statute contained in 28 U.S.C. § 1391(e).

The court concludes that venue for the ADEA claim involving the denial of the position in St. Petersburg, Florida pursuant to 28 U.S.C. § 1391(e)(3) lies in this judicial district because no real property is involved in this case and because the plaintiff resides in the Northern District of Alabama.

For different reasons, the court finds that this district is the proper venue for the plaintiff's Rehabilitation Act claim.  The venue statute contained in 42 U.S.C. § 2000e-5(3) provides that venue is proper in Rehabilitation Act cases in either the place where (1) the allegedly unlawful employment action was committed; (2) the judicial district where the employment records are maintained and administered; or (3) the judicial district where the aggrieved person would have worked but for the unlawful employment practice.  As to Gilbert's non-selection for the correctional program officer position, the judicial district where the alleged discriminatory act occurred, where the employment records are most likely maintained, and where Gilbert would have worked had he been awarded the job is St. Petersburg, Florida.

However, because venue is appropriate in this district on the ADEA act claim and for the plaintiff's claims relating to his non-selection for the inmate systems manager position at the

---

[10]The court concludes that the defendants properly preserved their venue challenge in their motion to dismiss or in the alternative, a motion for summary judgment.

7

Talladega, Alabama facility, the court finds that it has venue over the plaintiff's Rehabilitation

Act claim in connection with his denial of the position in St. Petersburg, Florida for reasons of

judicial economy and efficiency.  *See S. Aggregate Distrib. Inc.*, No. 05-00178-C, 2005 WL

1387633, at *2 (S.D. Ala. July 6, 2005) (citing Moore's Federal Practice § 110.05 (3rd ed. 2004)

as authority for principle of pendant venue where the court exercises venue over one claim and

thereby is given venue over other claims set forth in the complaint).

### 2. ADEA Claim

Gilbert alleges that the denial of his application for employment at the BOP facility in St.

Petersburg, Florida was in violation of the ADEA.  To establish a *prima facie* case of age

discrimination in violation of the ADEA, a plaintiff must prove that he (2) is a member of a

protected class; (2) was subjected to an adverse employment action; (3) was replaced by or

otherwise lost his position to a substantially younger person; and (4) was qualified for his

position.  *See Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (citing *Benson v.*

*Tocco, Inc.,* 113 F.3d 1203, 1207-08 (11th Cir. 1997)).

The third prong of the analytical paradigm is at issue in this case.  In accessing the

"qualified" prong, courts typically focus on the plaintiff's skills and background to determine if

he or she was qualified for a particular position.  *See Damon,* 196 F.3d at 1360 (quoting *Clark v.*

*Coats & Clark,* 990 F.2d 1217, 1227 (11th Cir. 1993)).  The defendants argue that the plaintiff

cannot satisfy his *prima facie* burden because plaintiff does not dispute that he was not on the

DOJ re-employment priority list on either the February 15, 2002 opening date or on the March

11, 2002 closing date.  Instead, the plaintiff's own submissions establish that he was not placed

on the DOJ re-employment priority list until June 10, 2002.  Gilbert's submissions do not

specifically address his ADEA claim within the context of the denial of the position in St. Petersburg, Florida.

Given the lack of evidence establishing that Gilbert was on the re-employment list within the requisite time period to be considered for the position at the St. Petersburg facility, the court concludes that the defendants' motion for summary judgment is due to be GRANTED on the plaintiff's ADEA claim filed in connection with his non-selection for the correctional program officer position in St. Petersburg, Florida.

**3. Rehabilitation Act Claim**

As an alternate argument, Gilbert alleges that he was denied employment at the St. Petersburg facility because he was perceived as having a disability based on his receipt of worker's compensation benefits for depression.

"To establish a *prima facie* case of discrimination under the [Rehabilitation] Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." *Sutton v. Lader,* 185 F.3d 1203, 1207-08 (11th Cir.1999).

For the same reasons underlying the decision on the ADEA claim, the court finds that Gilbert cannot establish a *prima facie* case under the Rehabilitation Act because he was not on the DOJ's re-employment priority list on either the February 15, 2002 opening date or the March 11, 2002 closing date. Without proof that he was qualified for the position, the court finds that the defendants' motion for summary judgment is due to be GRANTED on the plaintiff's Rehabilitation Act claim in connection with the St. Petersburg position.

**B. Denial of Employment at the Talladega Facility**

**1. Title VII Retaliation**

The plaintiff's retaliation claim is not a model of clarity.  However, based on the plaintiff's submissions, Gilbert's retaliation claim appears to be based on two alternate theories. First, plaintiff appears to argue that he was demoted and prevented from returning to work in April 1995 because he questioned his supervisor's decision to authorize the early release of a federal inmate in 1994.  Second, Gilbert appears to argue that his inability to secure the inmate systems manager position at the Talladega, Alabama facility in 2002 was also based on the problems he had with his supervisor in 1994.

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must establish that (1) he engaged in a statutorily protected expression; (2) he was subjected to an adverse employment action; and (3) a causal link between the adverse employment action and the protected activity.  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).  Under either theory of liability, the court concludes that Gilbert has not presented sufficient evidence to establish a *prima  facie* case of retaliation.

Even if the plaintiff could establish a *prima facie* case as it relates to his first theory of liability (i.e., that his October 1994 demotion and inability to return to work in April 1995 were in retaliation for his questioning the propriety of an inmate's early release), the court finds that plaintiff has failed to provide evidence that he filed an EEO complaint regarding the above-referenced events.  Gilbert testified that he did not recall filing an EEO charge relating to his demotion, inability to return to work in April 1995, or his eventual separation from federal

10

employment.[11]  Instead, the record establishes that the only EEO complaint that Gilbert filed is based on the allegations at issue in this case - i.e, his non-selection for the positions at the correctional facilities in St. Petersburg, Florida and in Talladega, Alabama.[12]

Filing a timely administrative complaint is a prerequisite to having an actionable Title VII retaliation claim.  A federal employee's unexcused failure to timely initiate the EEO process results in the dismissal of the case.  *See Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986).  Given Gilbert's own-admission that his first filing of EEO complaints was in connection with his attempts to secure federal employment beginning in 2002, the court finds that he cannot maintain a retaliation claim based on alleged adverse employment actions that occurred in 1994 and 1995.

As it relates to the plaintiff's second theory of liability (i.e., that he was not awarded the inmate systems manager position in 2002 because of problems he had with his supervisor in 1994), the court finds that Gilbert does not present the court with sufficient evidence to establish a *prima  face* case of retaliation.  At issue is the plaintiff's ability to establish that he engaged in a statutorily protected activity and to demonstrate a causal link between the January 1994 dispute with his supervisor and his allegations in this lawsuit that he was denied employment at the Talladega, Alabama facility in June 2002.

An employee engages in statutorily protected activity if: (1) he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing in conjunction with allegations of the type of employment discrimination protected by Title VII

---

[11]*See* doc. # 22, *Ex*. 1, p. 61, 63.

[12]*Id.*

11

("the participation clause"); or (2) he has opposed any practice made an unlawful employment practice ("the opposition clause") in conjunction with allegations of the type of employment discrimination protected by Title VII. *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1350 (11th Cir. 1999). The participation clause protects proceedings and activities which occur in conjunction with or *after* the filing of a formal charge with the EEOC.

*E.E.O.C. v. Total Sys. Servs. ., Inc.,* 221 F.3d 1171, 1174 (11th Cir. 2000) (*emphasis added* ).

Gilbert's submissions do not indicate that his questions to his supervisor regarding the early release of an inmate are the type of activity protected by either the participation or opposition clause. Specifically, Gilbert's questions to his supervisor are not activities related to the plaintiff's participation in activities designed to investigate alleged employment discrimination or activities related to the opposition to alleged discriminatory employment practices. Instead, the plaintiff's questions to his supervisor appear to be related to various regulations regarding the management of federal inmates, not the type of employment discrimination protected under Title VII. Consequently, the court finds that Gilbert has not presented evidence that he engaged in a statutorily protected expression.

Similarly, the court finds that the plaintiff has presented insufficient evidence to establish the requisite causal link. This third element of the *prima facie* case requires a plaintiff to establish that the purportedly protected activity (objecting to the early release of an inmate in 1994) and the adverse employment action (failure to receive the position at the Talladega facility in 2002) were not wholly unrelated. *Hairston*, 9 F.3d at 920. The requisite causal connection in a retaliation case can also be inferred from close temporal proximity. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

12

Even assuming that Gilbert's questions to his supervisor regarding the release of an inmate were the type of activity protected by Title VII, the eight-year time period between the challenged activity and the adverse employment action does not establish the requisite causal connection necessary to establish a *prima facie* case of retaliation.  Specifically, a reasonable juror could not conclude that questions addressed to a supervisor in 1994 were related to his inability to receive the inmate systems manager position at the facility in 2002.

In addition to close temporal proximity, a plaintiff must also demonstrate that the decision-makers were aware of the protected conduct.  *Gupta*, 212 F.3d at 590.  *See also, Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) ("We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action.").

Gilbert's Title VII retaliation claim also fails because he has not provided the court with any evidence that the decisionmakers, or persons responsible for making hiring decisions for the Talladega position, were actually aware of the problems that the plaintiff had with his supervisor in 1994.  Instead, the plaintiff's submissions merely assume the above-referenced knowledge.  *See e.g., Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002) (holding that district court erred in denying the motion and renewed motion for judgment as a matter of law without evidence that the decision-maker had knowledge of the protected activity and without evidence of a causal connection between the protected activity and the adverse employment action).

Based on the foregoing, the court finds that the plaintiff has not presented sufficient

13

evidence to establish a *prima facie* case of retaliation in connection with the denial of the position at the Talladega, Alabama correctional facility.  Consequently, the motion for summary judgment is due to be GRANTED on this claim.

### 2. ADEA Claim

As an alternate argument, Gilbert argues that his denial of the position at the Talladega, Alabama facility was in violation of ADEA.  The prima facie elements of an ADEA claim are set forth in the court's discussion of the plaintiff's claim relating to the denial of the position at the St. Petersburg, Florida facility, and consequently, will not be repeated here.

The court finds that Gilbert has established a *prima facie* case under the ADEA for the denial of the position at the Talladega facility because his submissions create a genuine issue of material fact about whether he was qualified for the position.  Specifically, a June 28, 2002 letter from the DOJ establishes that Gilbert was on the re-employment priority list effective June 10, 2002, only five days after the submission of his employment application and prior to the closing date of the FCI Talladega position.  Consequently, a reasonable jury could reject the defendants' contention that Gilbert was not considered for the job because he was not on the re-employment priority list.

Similarly, the court finds that the plaintiff has created a jury question on the issue of pretext.  After a defendant provides the court with a age-neutral justification for the adverse employment action, the plaintiff must show that the defendant's explanation is not worthy of credence to survive a motion for summary judgment.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  "Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment or for judgment as a matter of law simply by presenting

14

evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." *Evans v. McClain of Georgia*, Inc. 131 F.3d 957, 964 -65 (11th Cir. 1997).  This showing is typically referred to as the pretext requirement.  *Id.*

A plaintiff can demonstrate pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable fact-finder could find them unworthy of credence." *Hamilton v. Montgomery County Bd. of Educ.*, 122 F. Supp. 1273, 1281 (M.D. Ala. 2000) (citing *Combs*, 106 F.3d at 1528).

In this case, the defendants' age-neutral justification for Gilbert's non-selection is their argument that he was not eligible for employment at the Talladega facility because he was not on the re-employment priority list.  However, as articulated in the discussion of the plaintiff's *prima facie* case, the parties' submissions indicate that Gilbert **was** on the re-employment priority list effective June 10, 2002, only five days after the submission of his employment application and approximately one week prior to the job's closing date.  Given the above-referenced evidence, a juror could conclude that the June 28, 2002 letter from the DOJ definitively establishes that Gilbert was on the re-employment priority list in sufficient time to be considered for the position at the Talladega facility.

In short, the plaintiff has presented evidence directly contradicting the defendants' purportedly age-neutral justification for his non-selection.  Accordingly, the court finds that the plaintiff has presented sufficient evidence of pretext to survive the defendants' motion for summary judgment on the ADEA claim relating to the position at the Talladega, Alabama correctional facility.

### 3. Rehabilitation Act Claim

Lastly, the plaintiff argues that the denial of the position at the Talladega, Alabama facility was in violation of Rehabilitation Act.  The *prima facie* elements of a Rehabilitation Act claim are set forth in the court's discussion of the plaintiff's claim in connection with the denial of the position at the St. Petersburg, Florida facility, and consequently, will not be repeated here.

The court finds that the plaintiff has not established a *prima facie* case because his submissions do not create a genuine issue of material fact about whether the defendants perceived him as being disabled.  To establish a "regarded as" disability claim under the Rehabilitation Act, a plaintiff must first establish the existence of a disability (whether real or perceived); (2) that he is otherwise qualified to perform the essential functions of the job; and (3) discrimination based upon the real or perceived disability.  *Williams v. Motorola, Inc*., 303 F.3d 1284, 1291 (11th Cir. 2002).[13]

A disability is defined as a physical or mental impairment that substantially limits one or more of the major life activities of an individual.  42 U.S.C. § 12101(2).  Consequently, an impairment or a perceived impairment, standing alone, is not necessarily a disability as contemplated by the Rehabilitation Act.  *Pritchard v. S. Co. Servs*., 92 F.3d 1130, 1132 (11th Cir. 1996).  Instead, a plaintiff claiming to be disabled under the Rehabilitation Act must demonstrate that he or she is substantially limited in one or more major life activities.

Working is classified as a major life activity, and a plaintiff claiming that an impairment hampers the major life activity of working must establish that his impairment leaves him "unable to

---

[13]The standards for determining discrimination under the Rehabilitation Act are the same as those applied under the Americans with Disabilities Act ("ADA"). *Sutton v. Lader,* 185 F.3d 1203, 1207 (11th Cir. 1999).

16

work in a broad class of jobs." *Sutton v. United Air Lines,* 527 U.S. 471, 491 (1999).  An

employer's awareness of a plaintiff's alleged impairment is insufficient to establish that it regarded

the plaintiff as impaired.  *See Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 910-11 (11th

Cir. 1996).

      In this case, Gilbert contends that he is not presently disabled but believes that the

defendants have refused to re-employ him because they perceive him as suffering from disabling

depression based on his worker's compensation claim.

      However, as the above-referenced authorities indicate, the defendants' awareness of

Gilbert's previous problems with depression are insufficient to establish that they regarded him as

being disabled and thus, ineligible for the job at the Talladega, Alabama facility.  In fact, the record

contradicts his allegations that the defendants regarded him as being disabled.  For example, the

DOJ placed him on the re-employment priority list effective June 10, 2002, presumably based on

letters submitted by his doctors in April and May 2002 indicating that he could return to work

without any medical restrictions.

      Accordingly, the court finds that Gilbert's claim that defendant regarded him as disabled

is unsubstantiated by any evidence in the record.  *See Hilburn v. Murata Elec.,* 181 F.3d 1220,

1228 (11th Cir. 1999) ("Conclusory allegations without specific supporting facts have no

probative value.").  As plaintiff has not presented sufficient evidence to raise a question of fact

concerning whether he is "disabled," as required to establish his *prima  facie* case, defendant is

entitled to summary judgment on plaintiff's Rehabilitation Act claim.

## IV. CONCLUSION

      Based on the foregoing analysis, the court concludes that the defendants motion for

summary judgment (doc. # 22) is due to be GRANTED in part and DENIED in part. Specifically, the court finds that the motion for summary judgment is due to be GRANTED on all the plaintiff's claims in connection with his non-selection for the correctional officer program position in St. Petersburg, Florida.

Similarly, the motion for summary judgment is due to be GRANTED on the plaintiff's Title VII Retaliation and Rehabilitation Act claims in connection with his non-selection for the inmate systems manager position in Talladega, Alabama.

However, the motion for summary judgment is due to be DENIED on Gilbert's ADEA claim in connection with his non-selection for the inmate systems manager position in Talladega, Alabama.

A separate order will be entered.

DONE and ORDERED this 29th day of March, 2006.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE